EZEKIEL J. TUCKER, executor, appellant,

and

NANCY TUCKER, respondent.

1. Where some of the devisees of an estate approved of, and others acquiesced in, an exchange of the property made by the executor,— *Held,* that they were, under the circumstances, estopped from afterwards questioning the propriety of the exchange.

2. The recovery of a judgment against an executor by a broker, for alleged services which the executor denies, under oath, were ever rendered, does not warrant an allowance for its payment out of the estate.

---

On appeal from the decree of the orphans court of Union county.

*Mr. W. P. Wilson,* for appellant.

*Mr. J. R. English,* for respondent.

Tucker *v.* Tucker.

THE ORDINARY.

Testimony having been taken under the order of this court (*Tucker* v. *Tucker*, 1 *Stew.* 223), the cause has been again heard. The questions discussed on the last hearing were, whether the executor should be charged with the amount at which the homestead farm was valued in the exchange with Mr. Clark; whether he should be allowed a sum of money which he was compelled to pay on a claim of Daniel W. Brookfield, for commissions on that exchange; whether he should be allowed the premium paid to his wife for money lent by her to him, as executor, on security of the assignment of a mortgage on the property received from Mr. Clark, and subject to which that property was conveyed to the executor; and whether he should be allowed commissions on the full amount of the valuation put upon the homestead property in the exchange.

It appears that a caveat was filed against admitting the will to probate. The will disposed of the entire estate by particular gifts to the widow and children. They appear to have agreed that it should not be proved, and that the estate should be divided among them as it would have been divided according to law in case of intestacy. They subsequently found difficulty in disposing of the real estate, because of judgments of record against some of the heirs, and they then agreed, in order to overcome this difficulty, that the will, which gave to the executor and the widow the power to sell the real estate not specifically devised, should be proved. It was proved accordingly, and subsequently the homestead farm was exchanged with Amos Clark for a mortgage of $16,000, to be given by him on the farm and a house and land in Elizabeth valued in the exchange at $12,525, and subject to a mortgage for $2,525.

The evidence shows very clearly that the exchange was made with the actual and expressed consent of some of the parties in interest, and with such an understanding on the part of the executor with the rest in regard to the manner in which he was to dispose of the farm as to estop them

from denying his authority to make it. Not only does he swear that he consulted with all the heirs in reference to the proposed exchange, but Abraham F. Tucker testifies that all the heirs consented to it. He says that he, himself, consented to the making of the exchange. His language is: " I consented in this way, that they had better make the exchange if they would settle with the heirs right away, according to agreement." He further says : " I was anxious that the executor should make this exchange, provided he would settle up without any costs. I mean the Amos Clark exchange, or the one before ; I mean them both ; all the other parties in interest, without a dissenting voice, agreed to the Amos Clark exchange, provided the estate was settled up immediately, and all the heirs paid off."

Mahlon Tucker not only testifies that his mother, the exceptant, knew all about the exchange, and consented to it, but that he, himself, and his brother Frank, consented to it, also. He further testifies, that the will was proved in order that the executor might be thus enabled to make title to the property, with a view to exchanging it for other property. The wife of the executor swears that the heirs urged her husband to exchange the farm at different times, whenever they met. His daughter, Anna J. Crouthers, testifies that she heard the exceptant and three of the heirs (Mahlon, Frank and Amzi) tell the executor that they wanted the property sold or exchanged. The executor swears that Mrs. Squires, one of the heirs, expressed a wish that the exchange with Clark should be made ; that Uzal, another of the heirs, told him, after the exchange was made, that he had done just what he wanted him to do; that Amzi, another of the heirs, who lived in Texas, told him, when he (Amzi) was here in New Jersey to assist in making another proposed exchange of the property, which fell through, to do the best he could with the property, and he would be satisfied with whatever he did ; that he had Frank's consent; that Mrs. Pruden, another of the heirs, told him, before he made the exchange, to sell the property or get

Tucker *v.* Tucker.

clear of it the best he could; and, he adds, that his sister Mary, although he cannot recollect what she said on the subject, seemed to be very well satisfied with the exchange when he and she were talking about it.

The exchange was made in May, 1871. There does not appear to have been any complaint in regard to it until the exceptant (who, it should be stated, joined in the deed with the executor) complained of it on the settlement of the executor's account, and then she alone complained of it, for the others did not except.

The offer of $30,000 cash for the property, said to have been made by Randolph, appears not to have been a *bona fide* offer. The price at which the property was struck off at the executor's sale of personal property, when it was put up, was the bid of the executor, and there was no real bid. The offer of Pruden, the husband of one of the heirs, was to take the farm at the price of $25,000, and give his notes for the money. The executor was not satisfied with the security, and believed that the offer was not a sincere one. There is no evidence that it was so. I am satisfied from the evidence that the exchange had, when it was made, the approval of all the parties in interest. They have dealt with the property received in exchange in such a manner as to show that they at least acquiesced in the exchange. The executor swears that they were all in negotiation with Simeon J. Ahern to dispose of the Elizabeth property received from Mr. Clark, in exchange to him. The statement of the exceptant, that when she agreed to the exchange, it was with the understanding that the property received from Mr. Clark was to be subject to a mortgage of only $500, appears to be due to a failure of recollection. Mahlon swears that the executor told her that that property was mortgaged for $2,500. It appears that $2,000 of the amount of that mortgage were provided for in the mortgage on the farm, which was made for $16,000, to include $2,000 of the amount of the mortgage on the Elizabeth property. It would, under the circumstances, be unjust to charge

the executor with the price at which the farm was valued in the exchange. Since that time real estate generally has fallen in value, and the evidence is, that this is not an exception. The property received in exchange has fallen from a valuation of $10,000 to a valuation of about $5,000. The amount of the mortgage on the farm is said to be collectible. The account should show what the executor received in the exchange, and he should account for that specifically.

He will not be allowed the amount paid to Brookfield for commissions, as land agent, in the exchange. He swears that he never agreed to pay any commissions, and when Brookfield sued him for the amount which he claimed for that alleged service, he resisted the demand and defended the suit. The result of the action (it was not brought against him as executor, it may be remarked,) was a judgment against him. The fact that a judgment has been recovered against him does not, of itself, constitute a good reason for charging the estate with the payment of the demand for which it was recovered, when the executor swears that it it was for compensation which he never agreed to pay, and that, too, for alleged services which were never rendered.

He is not entitled to allowance for the premium which he claims to have paid to his wife for the money which she advanced on the security of the assignment of the $2,525 mortgage.

He is entitled to commissions as executor on $23,475, the amount realized for the farm in the exchange. Mr. Clark testifies that the Elizabeth property was worth, at the time of the exchange, $10,000, if clear of encumbrance. It was taken by the executor subject, practically, to a mortgage of $525. He therefore realized for the farm what was equivalent to $23,475 in value.

The claim to allowance of the amount of the bill of goods sold to McDevitt ought not to have been rejected. It should be allowed.

The decree of the orphans court should be corrected as far as necessary to conform to this decision. The appellant is entitled to costs of the appeal, payable out of the estate.